Sidney A. Fine, J.
On March 29, 1972, the G-rand Jury of Bronx County indicted defendant for the crime of criminal possession of a dangerous drug in the fourth degree and other related crimes. The indictment alleged that on January 31, 1972, defendant knowingly and unlawfully possessed a narcotic drug, to wit: heroin (49 glassine bags) weighing more than % of an ounce. After several appearances in the Supreme Court, Bronx County, the instant action was transferred to the Centralized Special Narcotics Parts at 111 Centre Street, in New York County.
In April of 1972, the Legislature enacted article 5-B of the Judiciary Law which established Centralized Special Narcotics Parts in New York County with city-wide jurisdiction with respect to the trial of any narcotics indictment (Judiciary Law, §§ 177-a to 177-e).
Defendant contends that article 5-B of the Judiciary Law is unconstitutional in that it deprives him of due process and equal protection of the law. While defendant acknowledges that the creation of the Centralized Narcotics Parts does not violate his constitutional rights per se/ he maintains that the execution of the program does. The argument is predicated upon three speculative assumptions: (1) that there are no reasonable standards employed in determining which cases are to be transferred to the Centralized Narcotics Parts; (2) that the New York County petit juries may not be comparable to the juries of the counties of origin; (3) that defendants who have their cases transferred to the Centralized Narcotics Parts would receive “ harsher penalties ” than those in the county of origin.
In order to understand and analyze the legislation under attack, the court must examine the intent of the Legislature in relationship to the problem of drug addiction and drug-related crimes.
*941 ‘ ‘ The legislature hereby finds and declares that an emergency of grave dimensions exists in narcotics law enforcement in cities having a population of one million or more. The overall law enforcement effort has not been successful in stemming the distribution of narcotic drugs. The legislature finds that the ineffectiveness of official efforts to contain the narcotics traffic is due in significant part to the inability of the overburdened criminal justice system to cope with the enormous volume of narcotics cases.
“ The legislature further finds that this crisis, which transcends the traditional jurisdictional boundaries of the counties wholly contained within such cities having a population of one million or more, demands coordinated prosecution, centralized direction and the infusion of massive new resources.
“ The legislature declares that without these new directions and resources, this crisis will intensify and very shortly overwhelm the already strained criminal justice system.
“ Based upon the above findings the legislature hereby declares that an emergney narcotics court program is required.
“ It is the intent of the legislature that the emergency narcotics program should be coordinated by the division of criminal justice of the office of planning services in cooperation with the criminal justice coordinating councils of such cities. The program would be implemented by the joint efforts of the district attorneys of the counties within cities having a population of one million or more, the judiciary, and other criminal justice services acting in accordance with a mutually agreed upon plan. The legislature contemplates that the program authorized herein shall consist of the establishment of special narcotics parts in the supreme court in cities having a population of one million or more to hear and determine narcotic cases from within counties wholly contained in a city having a population of one million or more, commencing not later than the September nineteen hundred seventy-two term and continuing thereafter during the duration of the emergency.” (Judiciary Law, § 177-a.)
The statistics compiled by the Legislature clearly reveal the enormity and magnitude of the problem. In 1968, there were 27,292 drug arrests. In 1969, the number increased to 48,452 and by 1970, it reached epidemic proportions of 73,848. Patently, drug addiction is the single most important aspect of the crime problem in New York City today.
The Legislature declared that the already strained criminal justice system could not handle the case load in the usual manner. The crisis transcends traditional jurisdictional boundaries of *942 counties within New York City and demands co-ordinated prosecution, centralized direction and massive new resources. The Special Narcotics Court system was created to cope with the declared emergency. A more efficient and effective system is envisioned by the enactment of this legislation.
The People assert that the instant motion is procedurally defective and that defendant should have brought an action seeking a declaratory judgment. While such a proceeding would be more efficacious (see Fenster v. Leary, 20 N Y 2d 309) defendant has the right to chart his own course. The types of legal proceedings in which constitutional claims may be raised are for all purposes limitless. (8 N. Y. Jur., Constitutional Law, § 49.) Such a claim is cognizable at the Trial Term level (Matter of James, 54 Misc 2d 514, revd. 29 A D 2d 72, revd. 22 N Y 2d 545, affg. Trial Term).
This court holds that article 5-B of the Judiciary Law does not violate defendant’s constitutional rights. The courts have enumerated in numerous cases the fundamental rule that there is a strong presumption in favor of the constitutionality of a legislative enactment. The burden of proving invalidity is upon those who challenge the constitutionality and establish it beyond a reasonable doubt (Fenster v. Leary, 20 N Y 2d 309, supra; Matter of Van Berkel v. Power, 16 N Y 2d 37, 40). The moving party has not met this burden.
On the contrary, the defendant in his brief acknowledges that the Specialized Centralized Narcotics Courts are not unconstitutional per se. The alleged violations in the implementation of the statute are predicated upon conjecture and speculation. There is no factual evidence to support his contention that the Centralized Narcotics Courts would impose more severe penalties than those in a decentralized part. Nor can the defendant show prejudice or discrimination in being fried by petit jury consisting of citizens from New York County. Moreover, a centralized Grand Jury and petit jury is envisioned when the statute is fully implemented. Defendant also fails to show a constitutional violation in the method of transferring the case from the county of origin to the Centralized Narcotics Parts. There is no evidence showing any discrimination in selecting the cases to be sent to the centralized part. The cases processed by the Centralized Narcotics Parts appear to represent a cross section of narcotics eases and do not single out these defendants for special treatment as defendant suggests.
The court notes in passing that it is the well-settled principle of American jurisprudence that courts have the inherent author *943 ity to determine the constitutionality of a statute. The function of the court is to pass on issues raised before it and not to advocate a particular cause as the People suggest in their brief.
Accordingly, the motion is denied.